**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>RONALD J. HEDGES<br>UNITED STATES MAGISTRATE JUDGE | MARTIN LUTHER KING, JR.<br>FEDERAL BUILDING AND COURTHOUSE<br>50 WALNUT ST., ROOM 2042<br>NEWARK, NEW JERSEY 07101-0999<br><br>(973) 645-3827 |

April 18, 2006

**LETTER-OPINION & ORDER**
**ORIGINAL FILED WITH CLERK OF THE COURT**

James E. Patterson, Esq.
Graham, Curtin & Sheridan
Four Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962

Thomas B. Hanrahan, Esq.
Hanrahan & Robertelli, LLC
80 Grand Avenue
River Edge, New Jersey 07661

      Re:    **Gonnelli v. Town of Secaucus**
                **Civil Action No. 05-5201 (JLL)**

Dear counsel:

**INTRODUCTION**

This matter comes before me on the motion of plaintiffs Michael and Linda Gonnelli ("Gonnelli") to disqualify the Thoma B. Hanrahan & Associates law firm ("Hanrahan") as counsel for defendants Town of Secaucus, Dennis Elwell and Anthony Iacono ("Secaucus"). Secaucus opposes the motion. I have considered the papers submitted in support of and in opposition to the motion. There was no oral argument. Rule 78.

## **BACKGROUND**

The dispute in issue arises from Hanrahan's representation of Secaucus and Michael in a state court action, <u>Hartwig v. Mayor & Council of the Town of Secaucus</u>, Docket No. HUD-L-2304-03.  In <u>Hartwig</u>, plaintiff alleged violations of civil rights and named plaintiff Michael Gonnelli ("Michael") as a defendant among other town representatives.  Although the action was filed in April 2004, Hanrahan did not represent any of the parties in this case until the Municipal Excess Liability Joint Insurance Fund ("MEL"), a self-insured fund that insures approximately 360 of the state's 566 municipalities, determined that the Fund covered employment civil rights claims.  Attorney Martin Pachman was retained at the inception of the action and continued representing all defendants limited to employment related matters after Hanrahan's services were retained.  On March 9, 2004, MEL assigned Hanrahan to represent Gonnelli and Secaucus on all civil rights related issues.  On February 7, 2005, the jury returned a verdict in favor of Michael and Secaucus.  A motion for a new trial was denied and an appeal was filed.  The appeal was dismissed in December of 2005 without prejudice due to Hartwig's failure to file a timely brief.  In March of 2006 and notwithstanding its success on appeal, Secaucus reinstated Hartwig under a settlement with which neither Michael or Hanrahan are fully familiar.

Hanrahan concedes that Michael was a key witness in <u>Hartwig</u> and that extensive communications were exchanged between them.  However, Hanrahan argues that no confidential information relevant to this litigation has been disclosed to him that would jeopardize Gonnelli's position in this action.

Gonnelli maintains that, in preparation for the second day of his deposition and in

response to Hanrahan's inquiry, "do you have any skeletons in the closet?," he disclosed information regarding the specifics of this action.  Gonnelli states that he told Hanrahan significant details of his dispute with Secaucus.  Gonnelli states that he told him that due to his vote against the proposed building of a Wal-Mart gas station, Secaucus refused to approve a severance package which is similar to those granted to other former town employees.  Hanrahan denies that this exchange ever took place.

There are three incidents to which Hanrahn was a witness to the escalating dispute between Michael and Secaucus although the underlying facts are contested.  The first incident took place at lunch time on the first day of trial.  Hanrahan states that, for the first time, Michael mentioned to him that negotiations with Secaucus concerning his severance package was at an impasse and that Gonnelli had retained James Patterson to represent him against Secaucus.  The second incident also occurred in February 2005, the day on which the New Jersey Meadowland Commission vote, while Michael was preparing to testify.  Iacano called Hanrahan and requested that Michael be excused from trial to attend the meeting so that he could vote on the Wal-Mart gas station proposal.  Michael states that he discussed his situation with Hanrahan and was told to do, "what [he] felt was right."  The third incident involved mailings directed to Michael by Hanrahan.  Hanrahan admits that he was directed by Iacono to reroute communications regarding the Hartwig matter to his attention rather than to Michael's.  Hanrahan complied with this request because Iacono was the assigned representative of MEL regarding the Hartwig matter.  Notwithstanding Iacono's directive, a copy of the communications was forwarded to Michael at his office at the Department of Public Works.

## ANALYSIS

**I.    Conflict of interest**

L. Civ. R. 103.1(1) provides:

> [t]he Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in this Court, subject to such modifications as may be required or permitted by federal statute, regulation, court rule or decisions of law.

Accordingly, this motion for disqualification is governed by the New Jersey Rules of Professional Conduct ("RPC").

Motions to disqualify are viewed disfavorably, and disqualification is considered a drastic remedy. As a result, courts should hesitate to disqualify counsel unless absolutely necessary. See Essex Chem Corp. v. Hartford Accident and Indem. Co., 975 F. Supp. 650, 653 (D.N.J. 1997), aff'd. in part and rev'd. in part on other grounds, 993 F. Supp. 241 (D.N.J. 1998). Disqualification of counsel during pending litigation "does a great disservice to the affected client." Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 210, 221 (1988). However, the RPCs uphold important ethical standards. Only in extraordinary circumstances should a client's right to retain counsel of his or her choice outweigh professional standards. Dewey, 109 N.J. at 220. Therefore, a reviewing court must closely scrutinize the facts before it to avoid unjust results. See Essex Chem Corp., 975 F. Supp. at 653-54.

Where there is any doubt as to the propriety of an attorney's representation of a client, that doubt should be resolved in favor of disqualification. See Reardon v. Marlayne, Inc., 83 N.J. 460, 471 (1980). "Although doubts are to be resolved in favor of disqualification, the party

seeking the disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer is disqualified." Alexander v. Primerica Holdings, Inc., 822 F. Supp. 1099, 1114 (D.N.J. 1993) (quoting Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983)).

**(A)     Concurrent Representation**

>R.P.C. 1.7 states in relevant part:
>
>[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:
>>(1) the representation of one client will be directly adverse to another client; or
>>(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

Here, the Hartwig action was dismissed without prejudice on appeal in December of 2005.  Although a reported settlement on the matter has been reached in March, I am not aware of any filings at any time after the dismissal.  Hanrahan certifies that he was not involved in the negotiations resulting in the settlement.  Pursuant to the settlement agreement, Hartwig was reinstated to his position by Secaucus in April.

This action was filed by Gonnelli on October 31, 2005.  Because no Answer was filed as of February 2006, Gonnelli filed an Amended Complaint as of right.  Although no default was noted on the docket, Hanrahan representing Secaucus moved to vacate default and extend time to answer on the same day the Amended Complaint was filed.  I granted Gonnelli's motions on February 23.  Secaucus' Answer was filed on February 10.

Hanrahan's role in the settlement of Hartwig following its dismissal, if any, is of no moment as that action was litigated to completion in December 2005.  The fact that Gonnelli

never moved for entry of default and instead filed an Amended Complaint prior to the filing of an Answer, lead me to believe that procedural abnormality led to the delay. Furthermore, there is no evidence to show that Secaucus' failure to timely answer was a deliberate to avoid any concurrent representation.   Because the Hartwig action ended in December and Hanrahan's representation of Secaucus on this matter did not begin until two months later, I find no concurrent representation to exist so as to warrant the application of R.P.C. 1.7.

**(B)     Attorney's Duty to Former Clients**

R.P. C. 1.9 was enacted to "promote attorney loyalty, client confidence and public respect for the integrity of the bar."  Roham & Haas Co. V. American Cyanamid Co., 187 F.Supp.2d 221, 227 (D.N.J. 2001).  Section (a) provides:

> A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interest are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing.

Matters are considered substantially related when:

> It can reasonably be said that in the course of the former representation the attorney might have acquired information related to the subject matter of his subsequent representation ... [T]he test focuses on the similarity of the factual bases of the two representations, rather than on the similarity of the underlying causes of action.

Ciba-Geigy Corp. v. Alza Corp., 795 F.Supp. 711, 716 (D.N.J. 1992).  The adversity of interest arises "when substantially related matters place an attorney in a position that is materially adverse to a former client." Roham & Haas, 187 F.Supp.2d at 228.

Michael was employed by the Secaucus as the Director of Public Works and in that

capacity was sued for discrimination by one of his subordinates, Hartwig. Hanrahan was retained by MEL to defend Secaucus, including any claims asserted against all of its employees. Michael generally states that during the <u>Hartwig</u> litigation he disclosed facts to Hanrahan which may jeopardize his position in this action. However, he fails to identify any fact of which Hanrahan was informed which may result in prejudice. Of note is that Michael knew or should have known the nature and extent of Hanrahan's representation as an MEL-designated attorney to the <u>Hartwig</u> matter representing him and the Township, among other employees, concerning Hartwig's civil rights claims.

  Hanrahan admits that limited communications regarding the severance package dispute took place. However, he attests that at no time did he represent to Michael that he was his personal attorney and that all disclosures were voluntary. In his certification, Michael did not state that Hanrahan rendered any legal advice on his dispute with Secaucus. To the contrary, the only statement he references is that Hanrahan told him to, "do what [he] felt was right."

  As a former client, Michael is entitled to the loyalty of his attorney with respect to substantially-related matters. <u>Hartwig</u> was based on an employment dispute between Hartwig and Secaucus for wrongful termination. Both Hanrahan and Michael agree that Hartwig was an employee with an atrocious work record. He violated countless Town policies on a number of occasions and his employment was suspended twice. After his termination, Hartwig sued the Secaucus alleging civil rights claims on the basis of disability discrimination and failure to accommodate. By way of contrast, here, Michael and his wife Linda allege that due to Michael's refusal to vote for a variance allowing Wal-Mart to build a gas station at its store in Secaucus, his severance package was rejected and she was reassigned to another position in the Police Records

Department. Michael maintains that for the past twenty (20) years with the Twonship, he performed his duties in an exemplary manner achieving high recognitions and several service awards. Neither Michael nor Linda claim disability discrimination. Their allegations, among other things, state a First Amendment and an improper attempt to influence the actions of an independent state agency claims.

While both <u>Hartwig</u> and this action are related to employee actions against employers, the two actions are patently different. Here, Michael is a high ranking employee at Secaucus who was allegedly retaliated against for failing to vote as directed by Secaucus. Hartwig's employment was terminated for failing to adequately perform the tasks of his employment. The two actions are not related and concern a completely different set of circumstances. I find no relation between the two actions to satisfy the substantially-related matter requirement of <u>R.P.C.</u> 1.9.

Gonnelli failed to show any direct adversity in the representation. While he generally states that based on discussions with Hanrahan, his position in this litigation has been compromised, they failed to set forth any fact which was disclosed to Hanrahan that would injure him. Gonnelli failed to show direct injury to his interests generally or in <u>Hartwig</u> specifically. In light of the reported settlement and subsequent reinstatement of Hartwig, I find no basis for any future representation on the <u>Hartwig</u> matter. Further, all of the information Michael purportedly disclosed to Hanrahan is a matter of public record as it has been set forth in the Amended Complaint. Considering the simultaneous representation and Michael's knowledge of the same, it appears that Hanrahan's representation in <u>Hartwig</u> could not have yielded the type of exchange of information regarding this case which could be harmful to Gonnelli. Any information

disclosed appears to be voluntary and is a matter of public record.

Litigants should not be permitted to use disqualification as a tool to gain tactical advantage:

> When pondering the proper outcome for a specific case, 'courts must exercise extreme caution not to act under the misguided belief that disqualification raises the standard of legal ethics and the public's respect; the opposite effect is just as likely- encouragement of vexatious tactics, which increase public cynicism about the administration of justice.'

Carlyle Towers Condominium Assoc., Inc. v. Crossland Savings, FSB, 944 F.Supp. 341, (D.N.J. 1996) (citation omitted). In light of the circumstances presented, Hanrahan's disqualification is not warranted.

**(C)   Attorney as a Witness**

R.P.C. 3.7, states in relevant part:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>     (1) the testimony relates to an uncontested issue;
>     (2) the testimony relates to the nature and value of legal services rendered in the case; or
>     (3) disqualification of the lawyer would work substantial hardship on the client.

The New Jersey Supreme Court Advisory Committee explained the perplexity of an attorney undertaking the roles of an advocate and witness, stating:

> An Advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.

N.J. Comm. On Prof'l ethics. Op. 630. However, an attorney should not be disqualified solely on

the basis of the possibility of him testifying.  Main Events Prod., LLC v. Lacy, 220 F.Supp.2d 353, 356 (D.N.J. 2002).  To the contrary, "a number of [] courts interpreting RPC 3.7 have concluded that an attorney who will testify at trial need not be disqualified from participating in pre-trial matters ... 'In any event the rule only applies to trial and the attorney may continue to represent the client up to trial.'"  Id. (citations omitted).

Here, there is no clear indication as to the nature or substance of Harahan's testimony at trial.  Gonnelli has not set forth any specific facts relevant to his claims upon which Hanrahn may be called to testify.  Gonnelli's motion papers generally state that Hanrahan may be called to testify but without any further explanation.  Once the nature of Hanrahan's testimony has been specified, he should provide an affidavit concerning any information with which he is familiar.  Only after the extent of his knowledge and testimony has been ascertained may he be limited from participation at trial.  At this juncture, however, I will allow Hanrahan to represent Secaucus.

## II.     Attorney's Fees

In its opposition brief, Secaucus requests attorney's fees and costs on the basis of having to defend against Gonnelli's motion to disqualify.  Fed .R.Civ .P. 11(c)(1)(A) and Local Rule 7.1, mandate that requests for imposition of sanctions be made in a form of motion that is separate and independent from any underlying motion.  Secaucus' informal request is procedurally defective and will not be entertained.

## **CONCLUSION**

For the reasons set forth above, the motion to disqualify is DENIED.

I will conduct an initial conference on June 15, 2006, at 2:15 p.m.

**SO ORDERED.**

s/ Ronald J. Hedges<br>
United States Magistrate Judge

cc: Hon. Jose L. Linares, U.S.D.J.